## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **TIARE ENTERPRISES, INC.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Case No. 15-1553 (RJL)** |
| | ) | |
| **UNITED STATES DEPARTMENT OF** | ) | |
| **TRANSPORTATION** *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |

FILED

MAR 3 1 2017

Clerk, U.S. District and
Bankruptcy Courts

## MEMORANDUM OPINION

(March 31, 2017) [Dkts. ## 23, 27]

Plaintiff Tiare Enterprises, Inc. ("plaintiff" or "Tiare") seeks to overturn a 2015 decision by the United States Department of Transportation's Departmental Office of Civil Rights ("USDOT") affirming an earlier 2014 decision by the Hawaii Department of Transportation ("HDOT") to decertify Tiare as an Airport Concession Disadvantaged Business Enterprise ("ACDBE"). Currently before the Court are the parties' cross-motions for summary judgment. *See* Pl.'s Mot. for Partial Summ. J. [Dkt. #23]; Defs' Mot. to Dismiss in Part and for Summ. J. [Dkt. # 27]. Upon consideration of the pleadings, record, and relevant law, I find that USDOT's decision to affirm the decertification decision was supported by substantial evidence in the administrative record and was not arbitrary and capricious. Accordingly, defendants' Motion to Dismiss in Part and for Summary Judgment is GRANTED, and plaintiff's cross-motion for summary judgment is DENIED.

## BACKGROUND

### I.   Statutory and Regulatory Background

Congress has authorized USDOT to provide project grants to eligible airports as part of the Airport Improvement Program. 49 U.S.C. § 47104. In addition to other requirements that are not relevant here, the USDOT can only approve a grant if it receives written assurances that "at least 10 percent of all business at the airport selling consumer products or providing consumer services to the public are small business concerns . . . owned and controlled by a socially and economically disadvantaged individual. . . ." 49 U.S.C. § 47107(e). In order to facilitate compliance with this requirement, USDOT has promulgated detailed regulations to carry out the Airport Concessionaire Disadvantaged Business Enterprise ("ACDBE") program. The program, and its implementing regulations at 49 C.F.R. Parts 23 and 26,[1] set forth the eligibility requirements and required procedures for firms wishing to qualify as disadvantaged business enterprises and work at airports receiving funds under the Airport Improvement Program.

Initial eligibility determinations for the ACDBE program are not made by the USDOT, but by public or private entities ("recipients") like HDOT, most of whom receive funds from the USDOT. Recipients are required to apply the ACDBE regulations promulgated by the USDOT when making eligibility determinations. 49 C.F.R. § 23.31(a),

---

[1] 49 CFR Part 23 was promulgated separately to tailor a larger Disadvantaged Business Enterprises ("DBE") program to the airport-concessionaire-specific ACDBE program. However, Part 23 states that the standards and procedures set forth in Part 26 apply to the ACDBE program as well. 49 C.F.R. § 23.11, § 23.31 (a) (2011).

§ 26.83 (2011).   Under the regulations, ACDBEs must be at least 51% owned and controlled by socially and economically disadvantaged individuals.   49 C.F.R. § 23.3, § 26.69(b) (2011).   Individual applicants must prove by a preponderance of the evidence that they are in fact socially and economically disadvantaged.   49 C.F.R. § 26.61(b). However, citizens who are women or members of specified ethnic minority groups are presumed to be socially and economically disadvantaged.   49 C.F.R § 26.67 (2011). Presumptively disadvantaged applicants need not prove their eligibility by a preponderance, but they must certify in writing that they are *in fact* disadvantaged and that their personal net worth does not exceed $ 1.32 million.   *Id.*; 49 C.F.R. § 23.35.   Once certified, a firm must demonstrate annually that it still meets ACDBE status.   *See* 49 C.F.R. § 26.83 (i)—(j); *id.* § 23.1(d), § 26.83(a) (2011).   Every year, the ACDBE's owner must submit a sworn affidavit affirming its continued eligibility and its ability to meet the disadvantaged status requirement.   *Id.* at § 26.83(j) (2011).

In 2013, a recipient agency could rebut a presumption of economic disadvantage in two ways. First, if the owner's annual statement showed that his or her net worth exceeded $1.32 million, the presumption was rebutted automatically.   49 C.F.R. § 26.67(b)(1) (2011). Second, if the recipient had a "reasonable basis" to believe that the individual was not economically disadvantaged, the recipient could initiate proceedings to determine whether the presumption should be rebutted and decertify the firm from ACDBE status. *Id.* § 26.67(b)(2) (2011).   In order to initiate a decertification proceeding, the recipient had to provide written notice and reasons for the proposed decertification. *Id.* § 26.87(b) (2011) The recipient had to give the firm an opportunity for an informal hearing where the firm

could respond and provide evidence and argument in favor of continued certification. *Id.* § 26.87(d)(1) (2011). The firm could also elect to forego a hearing and provide its response and any arguments in writing. *Id.* § 26.87(d)(3). The burden of proof during a decertification hearing was (and still is) on the recipient agency seeking decertification, rather than the firm who facing potential decertification; the recipient must show by a preponderance of the evidence that the certification standards are not met. *Id.* Once a final decision is made, the recipient must provide the firm with written notice of its decision that includes specific references to evidence that supports each ground for decertification. *Id.* § 26.87(g) (2011).

Once a recipient formally decertifies an ACDBE, the decertified firm may file an administrative appeal with USDOT. *Id.* § 26.89 (2011). USDOT is directed to affirm a decertification decision *unless* the decision is "unsupported by substantial evidence" or is "inconsistent with the substantive or procedural provisions" of the ACDBE certification regulations. *Id.* § 26.89(f)(1). However, USDOT need not overturn a decision for a procedural error unless it resulted in "fundamental unfairness to the appellant or substantially prejudice[d] the opportunity of the appellant to present its case." *Id.* § 26.89(f)(3).

## II.   Factual and Procedural Background

Tiare Enterprises is a corporation owned and operated by Ms. Roberta Fithian ("Fithian"). AR0481, ¶ 1. Tiare operates concessions at airports in Hilo and Kona, Hawaii, and has been a certified ACDBE since 1986. *Id.* ¶¶ 5–6. On November 4, 2013, Fithian filed a certified affidavit of her continued eligibility as an ACDBE. AR0088–93. In her

affidavit, she included a personal net worth statement reporting $1,226,630 in assets, $243,044 in liabilities, and $983,586 in personal net worth. In November and December 2013, HDOT staff member Julie Rawlins corresponded with Fithian and requested additional clarification and documentation regarding her assets and liabilities. *See* AR0244-25, AR0247-48, AR0250, AR0252, AR0254-55.

On December 18, HDOT sent a written notice of its intent to decertify Tiare as an ACDBE. AR0074-78. As grounds for the proposed decertification, the notice stated that Fithian's personal net worth, properly calculated, was actually $1,782,591; the notice asserted that she had understated the value of her real estate and "other" assets on her personal net worth statement, and stated that it was not going to consider a supposed $187,641 liability Fithian had claimed because she provided insufficient documentation to establish its existence. Based on this calculation, the notice stated that she had "accumulated wealth too substantial to need the program's assistance" and could not therefore be regarded as economically disadvantaged. The letter indicated that participants are required to cooperate fully with HDOT's investigation, and that failure to cooperate could constitute grounds for decertification; the notice did not specifically indicate whether and how Tiare was uncooperative. AR0078. HDOT also stated (incorrectly) that the firm had "the burden of demonstrating by a preponderance of the evidence that it meets [ACDBE eligibility] requirements." AR0074. The notice concluded by stating that Fithian could request an informal hearing within 10 days of receipt of the letter. AR0078.

On December 20, Tiare's counsel emailed HDOT and stated that it "intend[ed] to invoke . . . [an informal] hearing, but would like to first speak with you." AR0377. On

December 23, Tiare's counsel emailed HDOT again and requested an extension to respond until January 31, 2014. AR0378. On December 26, Rawlins replied to Tiare's counsel, stating "I understand from your e-mail that you will be requesting a hearing. I will forward your email to [DBE Program Supervisor] Melanie Martin for her response regarding that request." AR0380. On December 27, Martin responded to Fithian's counsel and granted Tiare an extension to January 31, 2014 to respond to the decertification notice. AR0382. She also stated "the firm may either submit information that may support the continued certification of Tiare Enterprises, or request an informal hearing. . . ." Id.

On January 31, 2014, Fithian submitted a written response to the decertification proposal. AR0391. Fithian asserted that HDOT's personal net worth calculation was incorrect, and that her actual net worth was well below with $ 1.32 million threshold. AR0396. In addition, Fithian argued that HDOT's reliance on guidance from USDOT's General Counsel and its analysis in the notice was incorrect; HDOT should have simply been focused on Fithian's personal net worth and whether or not it rebutted the presumption of economic disadvantage, as required in 49 C.F.R. 26.67(b). Fithian argued that HDOT was instead bypassing the regulations and relying on USDOT guidance that was inapplicable to determine that she was not economically disadvantaged. AR0397.

On April 2, 2014, HDOT formally decertified Tiare on the grounds that it had "not met the burden of proof regarding its claim of economic disadvantage" and failed to cooperate with HDOT's requests for information. AR0424. The notice stated that a finding of economic disadvantage could be based on an individual's income, personal net worth, or the fair market value of individual assets. AR0419. The notice stated that Tiare

was not economically disadvantaged because Fithian's income placed her in the top 0.1% of wage earners, "the strength of her personal net worth qualifie[d her] to own numerous real estate properties in Hawaii," and she had "successful access to capital and credit opportunities." AR0423-24. With respect to cooperation, the notice stated that Fithian did not provide bank statements or loan documents that HDOT requested to establish the existence of $187,641 liability had she claimed, and did not provide a list of personal assets worth $1,000 or more. AR0423. On April 24, 2014, Fithian's counsel sent a letter to HDOT, requesting an "informal hearing at which Ms. Fithian may respond to HDOT's proposed removal" of eligibility. AR0320. On May 6, 2014, HDOT responded, stating that the decertification was final, that the time to request a hearing had passed, and that Tiare could appeal to the USDOT. AR0322.

Tiare administratively appealed HDOT's decision to the USDOT, alleging *inter alia* that HDOT failed to show that Ms. Fithian was economically disadvantaged, failed to grant an informal hearing, and failed to inform Fithian of the correct burden of proof. AR0326. On July 27, 2015, USDOT sent Fithian a letter formally notifying her that it affirmed HDOT's decertification decision on the grounds that there was substantial evidence to support HDOT's finding that her personal net worth exceeded $1.32 million, as well as substantial evidence to support its finding that Fithian demonstrated an "ability to accumulate substantial wealth." AR0001-0016.

In September 2015, Tiare filed suit against defendants USDOT and DBE Appeal Team Lead Samuel F. Brooks (in his official capacity) in September 2015, alleging that USDOT's affirmance of the decertification violated (1) Tiare's Fifth Amendment right to

due process of law,[2] and (2) the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) and (2)(D). *See* Compl. ¶¶ 22–25 [Dkt. #1]. Tiare's complaint specifically alleged that USDOT erred in affirming the decertification because (1) HDOT ignored her request for an informal hearing; (2) HDOT incorrectly calculated her net worth to exceed $1.32 million; (3) HDOT based its decertification on its conclusion that she "had a demonstrated ability to accumulate wealth," erroneously applying a regulation not in effect at the time of her decertification; and (4) because Fithian did in fact cooperate with HDOT's investigation at all times. Compl. ¶ 1.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). In the context of a case where the plaintiff challenges an agency's action under the APA, the reviewing court will uphold the challenged action unless it finds that the action is "arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The Court's review "is based on the agency record and limited to determining whether the agency acted arbitrarily or capriciously." *Rempfer v. Sharfstein*, 583 F.3d 860, 865 (D.C. Cir. 2009). The scope of review under the "arbitrary and capricious" standard "is narrow," and "a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43

---

[2] In its opposition to defendants' cross-motion for summary judgment, Tiare stated that it did not oppose USDOT's motion to dismiss its Fifth Amendment due process claim. Pl's Opp'n to Defs.' Mot. to Dismiss in Part and for Summ. J. at 3. [Dkt. # 33]. As a result, the Court will dismiss Tiare's due process claim and focus its analysis here on the remaining APA claim.

(1983).  The Court's task is to determine whether the agency's decision was "reasoned",

i.e., whether "it considered the relevant factors and explained the facts and policy concerns

on which it relied, and whether those facts have some basis in the record." *Nat'l Treasury*

*Emps. Union v. Horner*, 854 F.2d 490, 498 (D.C. Cir. 1988).

## ANALYSIS

I.   **Substantial Record Evidence Supports the Finding that Tiare Waived Its Right to an Informal Hearing.**

Tiare argues that this Court must reverse and remand USDOT's decision because

"HDOT deprived Tiare of its right to a hearing." Pl.'s Mot. for. Summ. J. at 15.  However,

the record shows that Tiare did not timely request an informal hearing, and thus USDOT

did not err in finding that Tiare "waived its right to have an informal hearing." AR002.

Tiare is correct that HDOT was required to provide Tiare with "an opportunity for

an informal hearing, at which the firm may respond to the reasons for the proposal to

remove its eligibility . . ." 49 C.F.R. § 26.87(d).  However, the regulations envision that

not every firm will invoke its right to a hearing, and states that firms "may elect to present

information and arguments in writing, without going to a hearing." *Id.* § 26.87(e).  The

administrative record demonstrates that Tiare submitted a written response to the proposed

decertification and did not request an informal hearing until after HDOT decertified the

firm.  On December 20, 2013, two days after receiving the notice of intent to decertify,

Tiare's attorney emailed HDOT.  In that email, she stated that Tiare was going to invoke

its right to a hearing, but *expressly* stated that it was not invoking the right at that time,

stating "We do intend to invoke such [an informal] hearing, but would like to speak with

9

you first." AR0377.

On January 30, 2014, the agreed-upon deadline for responding to the proposed decertification, Tiare submitted written materials "in response to" the proposed decertification. AR 0391. Tiare claims that it "reiterated [its] intent to have an informal hearing" in its written materials, but the response includes no such request, and simply concludes with a statement that "[w]e are more than happy to meet with you regarding this matter to address any questions and/or concerns that you may have." AR0398; *see* Compl. ¶ 12. This cannot reasonably be construed as a request for an informal hearing.

As such, Tiare did not attempt to invoke its right to a hearing until April 24, almost three months after it submitted its written response and more than 3 weeks after HDOT formally decertified Tiare. AR0319. As a result, USDOT was correct in finding that Tiare waived its right to an informal hearing.

## II.   USDOT Did Not Affirm HDOT's Decertification Decision by Relying on Tiare's Alleged Failure to Cooperate.

The parties have also spilled much ink over HDOT's finding that Tiare failed to cooperate with its original investigation, and its conclusion that this failure constituted independent grounds for decertification. *See* Defs.' Mot. to Dismiss and for Summ. J. at 24–25 [Dkt. # 27-1]; Pl.'s Opp'n to Defs.' Mot. to Dismiss in Part and for Summ. J at 17– 19 [Dkt. # 32]. *See* AR0418, AR0423–424 (decertifying Tiare on grounds of non-cooperation).

This discussion is misplaced—the Court's proper role at this stage is not to sit in direct review of HDOT's initial decision, but to review USDOT's decision to affirm that

decision on administrative appeal.  After close review of the record, it is clear that USDOT did not base its decision to affirm the HDOT on Tiare's alleged failure to cooperate.  In its July 2015 letter to Tiare's counsel, USDOT affirmed the decertification on the grounds that HDOT met its burden of proof "regarding excess [personal net worth] and rebutting the presumption of economic disadvantage." AR0016.  USDOT expressly stated in a footnote that it "need not . . . determine whether Ms. Fithian's failure to provide further information or documentation was a failure to cooperate." AR0012 at n. 10.[3]  Furthermore, USDOT now explicitly represents to the Court that it "declined to affirm HDOT's decertification on the basis of HDOT's conclusion that Tiare failed to cooperate with its certification review" Defs.' Mot. to Dismiss in Part and for Summ. J at 24.  As a result, I will limit my review of USDOT's decision to the grounds it clearly relied on—i.e., that Fithian's personal net worth exceeded $1.32 million dollars, and that she demonstrated an ability to accumulate substantial wealth such that she could not be regarded as economically disadvantaged. *See* AR001-16.

## III.    USDOT's Decision that HDOT Properly Met its Burden of Proof is Not Arbitrary and Capricious.

Tiare argues that HDOT improperly placed the burden of proof on Tiare during the decertification proceeding.  Tiare further argues that it raised this issue in its administrative

---

[3] USDOT's letter affirming the decertification decision is admittedly not a paragon of clarity on the issue of Tiare's alleged failure to cooperate. In a separate footnote, USDOT stated "we . . . find that Tiare failed to cooperate fully" and stated that "this ground alone is sufficient for affirming the certification." AR0002 at n.4.  However, given that the letter also stated that it need not determine whether or not Tiare cooperated, it did not refer to the cooperation issue in its formal conclusions, and it expressly denies now that that the affirmance was based on the cooperation issue, I conclude that USDOT's affirmance must stand or fall without reference to Tiare's alleged failure to cooperate.

appeal to USDOT, and that USDOT ignored this argument in its affirmance of the decertification, in violation of the APA. Pl's. Mot. for Summ. J at 18–19.

During a decertification proceeding, the agency must prove by a preponderance of the evidence that the individual is not socially and economically disadvantaged. 49 C.F.R. § 26.67(b)(3). However, there is record evidence indicating that HDOT did not properly understand the burden of proof, and represented to Tiare that ACDBEs possessed the burden of proving their continued eligibility in a decertification proceeding. In its notice of intent to decertify, HDOT stated that the "firm has the burden of demonstrating by a preponderance of the evidence that it meets [eligibility] requirements." AR0074, AR0078. When it decertified Tiare, HDOT appeared to state that Tiare "bore the burden of demonstrating by a preponderance of the evidence that they meet the eligibility requirements regarding economic disadvantage," and determined that Tiare had "not met the burden of proof regarding [its] claim of economic disadvantage." AR0419, AR0424.

Tiare argues that the USDOT ignored its argument about the burden of proof, and asserts that the failure to address a non-frivolous argument requires reversal. *See* Pl.'s Mot. for Summ. J. at 18–19 (citing *Frizelle v. Slater*, 111 F.3d 172 (D.C. Cir. 1997) (holding that agency's failure to address party's non-frivolous arguments was arbitrary).

However, the record shows that USDOT considered the appropriate burden of proof in a decertification proceeding and determined that there was substantial evidence to show that HDOT had actually met the appropriate burden of proof when it decertified Tiare, its own misstatements notwithstanding. Although USDOT did not dedicate a separate section to Tiare's burden-of-proof arguments in its administrative appeal decision, it is clear that

USDOT understood and analyzed HDOT's decision with the appropriate burden in mind. For example, the USDOT's decision letter quotes in full 49 C.F.R. § 26.67(b)(3), AR0007, which states that the entity seeking decertification has "the burden of demonstrating, by a preponderance of the evidence, that the individual is not socially and economically disadvantaged," and later, USDOT explicitly stated that the burden was on HDOT to demonstrate Tiare's ineligibility by a preponderance of the evidence, which it defined as "somewhat more likely than not." AR0013.  When it reviewed the record, it did not accept HDOT's proffered valuations for the Walua Road and Mamala Hoa Highway properties until it concluded that it "was more likely than not" that they were worth the values that HDOT had used. AR0014. Lastly, USDOT ended its decision by formally concluding that HDOT "met its burden of proof regarding excess [personal net worth] and rebutting the presumption of economic disadvantage." AR0016.  The various references to the burden of proof, and the explicit conclusions that HDOT met that burden, enable me to reasonably discern USDOT's reasoning and determine that it was not arbitrary and capricious. *Envt'l Def. Fund, Inc. v. EPA*, 465 F.2d 528, 537 (D.C. Cir. 1972) ("[I]f the necessary articulation of basis for administrative action can be discerned by reference to clearly relevant sources other than a formal statement of reasons, we will make the reference."); *U.S. Sugar Corp. v. EPA*, 830 F.3d 579, 642 (D.C. Cir. 2016) ("[W]e will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.")

IV. **Neither USDOT Nor HDOT Erred in Considering Relevant Factors Other than Fithian's Personal Net Worth.**

Tiare argues that HDOT could only decertify Tiare by determining that Tiare's

personal net worth exceeded $1.32 million, and that HDOT's (and USDOT's) consideration of other factors was erroneous. In it is original decertification letter, HDOT determined that Fithian's personal net worth exceeded $1.32 million, but it also determined that her high income, her multiple real estate properties, and her access to capital and credit opportunities further demonstrated that she was not economically disadvantaged. AR0424. USDOT affirmed this finding, stating that her high income, her property holdings, and her assets on hand provided substantial evidence that she had an ability to accumulate significant wealth, and was not disadvantaged. AR0015–26.

In 2013, at the time HDOT decertified Tiare, the governing regulations provided two ways for a recipient to decertify an ACDBE firm. First, if an individual's statement of personal net worth exceeded $1.32 million, then the presumption of economic disadvantaged was automatically rebutted. 49 CFR § 26.67(b)(1). Second, if the recipient had a "reasonable basis" to conclude that a presumptively disadvantaged person was not "in fact" disadvantaged, the recipient could start a decertification proceeding. *Id.* § 26.67(b)(2). The regulation does not explicitly state what can form a "reasonable basis."

According to Tiare, this meant that HDOT could only rebut Fithian's presumption by determining that her personal net worth exceeded $1.32 million. Pl.'s Opp'n to Defs.' Mot. to Dismiss in Part and for Summ. J. at 15 [Dkt. # 33]. I disagree. 49 CFR Part 26 also includes Appendix E, which states that agencies considering individual determinations of social and economic disadvantage should "examine factors relating to the personal financial condition of any individuals claiming disadvantaged status, including personal income for the past two years, . . . personal net worth, and the fair market value of all

assets . . . ."  Furthermore, the USDOT General Counsel has issued guidance to recipient agencies about how to comply with 49 CFR Part 26.  In that guidance, which was in effect at the time of Tiare's decertification, the General Counsel instructed recipients making determinations of economic disadvantage to "look not only at the individual's [personal net worth] but also at his or her overall economic situation," and states that it is appropriate for recipients to "review the fair market value of the individual's assets and determine it that level appears to be substantial and indicates an ability to accumulate substantial wealth." Mem. in Supp. of Defs.' Mot. to Dismiss in Part and for Summ. J at 22 n. 6 (citing Official Questions and Answers (Q&A's) Disadvantaged Business Enterprise Program Regulation (49 CFR 26) at p. 2).

USDOT therefore takes the position that a recipient, when forming a "reasonable basis" under §26.67(b)(2), could look at her overall economic situation in making a determination of economic disadvantage.  I agree.  This is a reasonable interpretation of the regulation.  49 CFR §26.67(a) refers to personal net worth, and says that the agency can automatically decertify someone when their net worth statement itself shows that net worth exceeds $1.32 million.  However, subsection (b), the provision that HDOT relied on, does not cabin the analysis to personal net worth, or even refer to personal net worth at all. Rather, it says that a recipient may initiate a decertification proceeding when it has a "reasonable basis" to believe that an individual is not "in fact" disadvantaged.  Section 26.67 does not explicitly state what can constitute a "reasonable basis."  Appendix E therefore provides helpful context and the General Counsel's interpretive guidance provides a reasonable interpretation stating that the recipient can look at factors other than

an ACDBE owner's personal net worth.  An agency's interpretation of its own regulations is entitled to deference unless "plainly erroneous or inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452. 461 (1997); *Lyng v. Pane*, 476 U.S. 926, 939 (1986) ("[A]n agency's construction of its own regulation is entitled to substantial deference.")  Thus, it was not erroneous for HDOT and USDOT to consider Fithian's overall economic situation, in addition to her personal net worth, when determining whether she was in fact economically disadvantaged.[4]

## V.   USDOT's Decision that Fithian was Not Economically Disadvantaged Was Not Arbitrary and Capricious.

Lastly, I conclude that USDOT's determination that Fithian was not in fact economically disadvantaged was not arbitrary and capricious.  As I stated previously, my role here is not to substitute my judgment.  As, I will not spend my time second-guessing every jot and tittle of USDOT's property valuations and value calculations.  Instead, I must, and will, simply determine whether USDOT arrived at a reasoned decision that considered the relevant factors, explained its reasons, and had some factual basis in the record for its

---

[4] In November 2014, USDOT promulgated a revised regulation adding a new grounds for decertification; if the "statement of personal net worth and supporting documentation demonstrate that the individual is able to accumulate substantial wealth, the individual's presumption of economic disadvantage is rebutted." 49 C.F.R. § 26.67.  The new provision says that the agency should consider the individual's income and the total fair market value of the individual's assets when determining whether the individual has demonstrated an ability to accumulate substantial wealth.  Tiare argues that, since this provision was not in effect in 2013, HDOT's consideration of these factors was an inappropriate retroactive application of the provision.  This is not correct.  Part 26's Appendix E and the General Counsel's interpretive guidance, which also call for the consideration of these factors, were fully applicable when Tiare was decertified, and the fact that the USDOT has clarified decertification proceedings by explicitly incorporating these factors into § 26.87(b) does not render their prior consideration inappropriate.  In fact, when it proposed the new regulation, the agency clearly explained that it was doing nothing more than "codify[ing] the existing guidance to recognize that the presumption may also be rebutted if the individual's personal net worth falls below the cap, but the individual is, in fact, too wealthy to be considered disadvantaged by any reasonable measure."

decision.  USDOT clearly did so here.

With respect to Fithian's personal net worth, USDOT reviewed the record and determined that there was substantial evidence to show that her personal net worth exceeded the $1.32 million cap.  Rather than reflexively affirm HDOT's calculation of her assets and liabilities, USDOT conducted its own review of the administrative record and determined that she had a personal net worth of approximately $1.5 million (as opposed to HDOT's higher calculation of approximately $1.8 million).  USDOT rejected HDOT's decision to increase the valuation of Fithian's two parcels of undeveloped land, on the grounds that HDOT's reliance on asking prices for comparable properties, rather than actual sales prices, was insufficiently probative to alter the original valuation Fithian provided.  In addition, USDOT rejected HDOT's incredibly tenuous assertion that Fithian owned $385,000 of personal property simply because her home insurance policy had a $700,000 property limit.  However, USDOT determined that there was sufficient evidence to support HDOT's valuations of the Walua Road and Mamala Hoa Highway properties, causing her personal net worth to be higher than she initially reported.[5]  USDOT also concluded that it was reasonable for HDOT to disallow Fithian's purported liability to her

---

[5] In its appeal decision, USDOT stated that it was more likely than not that the Mamala Hoa Highway condominium was worth $375,000. Fithian previously asserted that it was worth $111,800, which was less than its $115,000 purchase price more than 30 years earlier! HDOT instead pointed to the 2006 sales price of a unit in the same development to value the building at $375,000. USDOT also noted that the property generated $84,000 in rent in a single year to reinforce its conclusion that the higher valuation was correct. In its appeal, Tiare argues (and USDOT appears to concede) that the property did not in fact generate any rental income. Tiare argues that this mistake about the rental income renders USDOT's decision to adopt the higher valuation arbitrary and capricious. I disagree. Given that Tiare offered a value of $111,800, and HDOT offered a $375,000 value tied to the sale of another unit in the same building, it was not erroneous for USDOT to conclude that it was more likely than not that the development was worth $375,000. After all, common sense alone would tell you that a comparable property value would be more reliable than a 30-year old purchase price.

husband's company because of its scant documentation and unorthodox accounting.  As result, USDOT concluded that Fithian had a personal net worth of approximately $1.5 million, well above the $1.32 million net worth cap.  USDOT's administrative decision carefully explains the factors that it considered and the evidence it relied upon, and as such, it was not arbitrary and capricious.

USDOT also reviewed the record and determined that there was sufficient evidence to support HDOT's determination, in accordance with USDOT guidance, that her overall economic situation was such that she could not reasonably be considered economically disadvantaged, because her high income and substantial assets rebutted her presumption of economic disadvantage.  In so doing, USDOT clearly explained its reasoning and pointed directly to undisputed record evidence about her income and liquid assets, as well as to evidence showing the value of her real estate properties, to conclude that she could not be considered economically disadvantage.  For these reasons, USDOT did not err in affirming HDOT's decertification of Tiare.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss in Part and for Summary Judgment is GRANTED in part, and plaintiff's Partial Motion for Summary Judgment is DENIED.  An Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge